GARY M. RESTAINO
United States Attorney
District of Arizona

SHEILA PHILLIPS
Michigan State Bar No. P51656
Assistant United States Attorney
Two Renaissance Square
40 N. Central Ave., Suite 1800
Phoenix, Arizona 85004
Telephone: 602-514-7500
Email: Sheila.Phillips2@usdoj.gov
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| United States of America, | No. CR-23-1307-PHX-JJT-002 |
|---|---|
| Plaintiff, | |
| vs. | **UNITED STATES' RESPONSE TO DEFENDANT'S OBJECTION TO ORDER OF DETENTION** |
| Cesar Humberto Rivera, | |
| Defendant. | |

This Court should detain Cesar Humberto Rivera pending trial. Magistrate Judge John Z. Boyle correctly ruled that Defendant poses a danger to the community and there are no release conditions that would sufficiently mitigate that danger. The United States also believes he is flight risk.

**I.     FACTS**

Defendant was arrested in the District of Utah on a warrant stemming from the pending indictment in the District of Arizona. The Government sought detention based on danger to the community and as a flight risk at the time of Defendant's Rule 5 hearing in the District of Utah as indicated in the Government's Motion for Detention. *See* Doc. 28, Exhibit 1 page 5. At that time, the Government indicated in its Motion that all factors the court should consider under 18 U.S.C. § 3142(g) favored dentition.[1]   Defendant waived

---

[1] Defendant incorrectly states that the Government argued for the first time for dentition

his Rule 5 hearing and was transferred to the District of Arizona.  (Doc. 18).

The Bureau of Alcohol Tobacco Firearms and Explosives (ATF), with the assistance of the Department of Homeland Security Investigations (HSI), have been investigating Defendant for firearms trafficking to Mexico for more than a year.   In June 2022, ATF agents in Phoenix seized an M-2 .50 caliber rifle and pistol from Defendant due to his use of a false address on an ATF 4473 Form. M-2 .50 caliber rifles retail at approximately $20,000.00 and are capable of being converted to machineguns. These rifles fire belt-fed ammunition and must be fired from a tripod and/or mounted on a vehicle to be utilized and are highly sought after by members of Mexican drug cartels. *See* Doc. 28, Exhibit 3. Defendant's income did not support spending $20,000 on a firearm, which led ATF to believe he was purchasing the firearm for someone else or to sell.  Defendant also admitted during ATF's interview, that he did not live at the address he listed on the ATF Form 4473 and instead had lived with his cousin in Mesa for the last three years,[2] which is an indicator of potential straw purchasing.  ATF provide Defendant with a letter warning him about making straw purchases and dealing in firearms without a license. See Tr. 11/23/2023 at 5-6.

Shortly thereafter,  Defendant was under investigation in the District of Utah for recruiting straw purchasers to buy large caliber firearms and he is still under investigation. A possible Indictment is pending a forensic review of his cell phone seized during his August purchase of the machinegun. *See* Tr. 11/23/2023 at 6 and Doc. 28, Exhibit at 6-8.

On October 18, 2023, the grand jury in the District of Utah returned an indictment charging Defendant's alleged firearms facilitator, Jose Manuel Barbosa Torres, and his

___

based on dangerousness at the detention hearing in the District of Arizona in its Objection, to Order of Detention (Doc. 30).  Instead, the Government argued he was a danger from the onset.  See Doc 28, Exhibit 1 page 5.

[2] Defendant argues that he recently moved out and had not updated his driver's license; however, illegal purchasers of firearms often have a Arizona identification card or a driver's license to facilitate purchases and hide from law enforcement.

alleged straw purchasers Armando Figueroa Jr., Cecilio Luis Arriaga, and Iliana Dennis with violations of 18 U.S.C. §§ 922(a)(6) and 2 – False Statements During Acquisition or Attempted Acquisition of Firearms, Aiding and Abetting (2:23-CR-00383). All four persons were arrested in Utah on the same day as Defendant's arrest. Law enforcement arrested Defendant on the District of Arizona warrant, at the home of one of the indicted co-defendants, who is Defendant's cousin. Agents located Defendant after one of the straw purchasers indicated Defendant was hiding in his cousin's Utah residence to avoid arrest. *See* Tr. 11/23/2023 at 6-10.

The Utah investigation revealed the following information:

In January 2023, Barbosa Torres was communicating with an unknown individual via an encrypted messaging application. During that conversation, the unknown individual sent Barbosa Torres videos of what appeared to be Mexican cartel members carrying and shooting .50 caliber rifles and roadblocks commonly referred to as "narco blockades." The unknown individual also sent Barbosa Torres a phone number with the name "Cesar Rivera." The phone number sent to Barbosa Torres was the same phone number associated with the cell phone that agents seized from the Defendant on August 17, 2023, during his illegal purchase of a machinegun. *See* Doc. 28, Exhibit 1 at 6-7.

The Utah-based investigation also revealed that Barbosa Torres, Figueroa, and Arriaga collectively purchased at least eight (8) Barrett .50 BMG caliber rifles between April 2023 and August 2023 from Federal Firearms Licensees (FFLs) and private sellers. Barbosa Torres, Figueroa, and Arriaga and Dennis also attempted to purchase one (1) M2-SLR .50 caliber rifle from an FFL in August 2023 (the same type of firearm Defendant purchased with a false address in Phoenix in June 2022), and Barbosa Torres and Dennis attempted to purchase another Barrett .50 BMG caliber rifle from an FFL later that month. *See* Doc. 28, Exhibit 1 and Gov. Exhibit 1. These firearms typically retail between $8,500.00-$10,000.00. for organizing purchases for large caliber semi-automatic firearms. Barrett .50 caliber rifles are long-range, sniper rifles typically used in a "narco blockade". M2 .50 caliber rifles are easily converted to a machine gun and often used by Mexican drug

cartels.  Based on the investigation and the type rifles purchased, agents believe these firearms were likely destined for Mexican drug cartels members.  *See* Doc. 28, Exhibit 1.

On December 6, 2023, Barbosa Torres, who acted as the middleman between Defendant and the other persons charged in the District of Utah, entered a signed statement in advance of his guilty plea that indicated he provided cash to other straw purchasers for at least eight Barrett. 50 BMG caliber rifles on behalf of Defendant.  He also indicated he knew the firearms would be transported to Mexico.  *See* Gov. Exhibit 1, and 2-CR-00383-DS Doc. 49.

On August 17, 2023, Defendant, and others (including the co-defendant, Carlos Ramirez-Zavala, and a juvenile), met undercover agents to purchase a machinegun for $14,000.00.  Defendant and the others handled the machinegun, and the agents explained to Defendant and the others that the machinegun functioned as a fully automatic firearm and that it was illegal to possess.  Before the transaction was finalized, Defendant and others took the machinegun and loaded it into the vehicle they had driven to the location. All parties were taken into custody, and Defendant was found to be in possession of a 9mm handgun*.  See* Doc. 28, Exhibit 1 at 4.  The 9mm Defendant carried had been used to shoot at a residence by someone unknown person according to the National Integrated Ballistic Information Network's database. *See* Doc. 28, Exhibit 1 at 4-5 and Tr.  11/23/2023 at 25-26.

Post-*Miranda*, Defendant initially denied having any role in the machine gun purchase.  However, Defendant later admitted he had supplied $10,000.00 of the cash intended for the purchase. He also admitted he knew the firearm was fully automatic and illegal to possess. *See* Doc. 28, Exhibit 1 at 4-5.

ATF had been investigating Ramirez-Zavala, who assisted Defendant in the purchase of the machinegun, for several months.  Agents knew Ramirez-Zavala by his alias "Christian" as recruiter of straw purchasers for firearms being transported to Mexico. Tr. 11/23/2023 at 5 and Doc. 28, Exhibit 4.  The details of this investigation are contained in the Complaint against Ramirez-Zavala.  *See* Doc 1 and Doc. 28, Exhibit 4.  Defendant also

admitted that he had reason to believe Ramirez-Zavala was in the country illegally, which made it illegal for Ramirez-Zavala to possess any firearm.  Tr.  11/23/2023 at 30-31.

## II.    ANALYSIS

This Court reviews detention orders de novo.  *United States v. Koening*, 912 F.2d 1190, 1191-93 (9th Cir. 1990).  De novo review in this context does not mean the district court is required to hold a new evidentiary hearing to evaluate credibility disputes or even to grant further argument.  See *United States v. Raddatz*, 447 U.S. 667, 676 (1980).  Rather, the Court has discretion as to whether to hear additional argument or evidence, and "[c]learly, the district court is not required to start over in every case, and proceed as if the magistrate's decision and findings did not exist."  *Koening*, 912 F.2d at 1193.  Thus, the district court "should review the evidence before the magistrate and make its own independent determination whether the magistrate's findings are correct, with no deference."  *Id.*

This Court should  consider four factors in determining whether to detain an individual:

1.     the nature and circumstances of the offense charged, including the fact the offense involved a firearm (a dangerous, illegal, and fully automatic rifle);

2.     the weight of the evidence against the person;

3.     the history and characteristics of the person, including the person's character, physical and mental condition, family and community ties, employment, financial resources, past criminal conduct, and history relating to drug or alcohol abuse; and

4.     the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release.

18 U.S.C. § 3142(g); See also *Hir*, 517 F.3d at 1086; *United States v. Winsor*, 785 F.2d 755, 757 (9th Cir. 1986); *United States v. Motamedi*, 767 F.2d 1403, 1407 (9th Cir. 1985).   In Defendant's case, all the above factors support detention, however, the nature of the charged offense and the danger Defendant poses to the community are the most significant.

"[T]he language [in the Bail Reform Act] referring to the safety of the community refers to the danger that the defendant might engage in criminal activity to the detriment of the community," and it has "a broader construction than merely danger of harm involving physical violence." S. Rep. 98-225, at 12, 1984 U.S.C.C.A.N. 3182, 3195 (Aug. 4, 1983). Here, Defendant is at least a mid-level firearms trafficker of large caliber firearms, often used to facilitate drug trafficking, which evidences his broad and significant danger to the community.

Defendant's past actions are the best predictor of his future ones. Even after ATF warned him regarding an illegal purchase of a large caliber firearm as well as other firearms, Defendant apparently continued to recruit straw purchasers to buy large caliber firearms and he himself knowingly purchased an illegal machinegun – all of which are high-powered and highly coveted firearms by Mexican drug cartel members. In addition to the type of firearms, additional evidence exists that Defendant was orchestrating the purchases to send firearms to Mexico. First, according to phone records and straw purchaser interviews in the District of Utah case, at least some of the firearms were likely going to Mexico. *See* Doc. 28, Exhibit 1. Second, during the Phoenix-based investigation, ATF confirmed that Defendant Rivera was working with his co-defendant Ramirez-Zavalla, who allegedly recruited straw purchasers and organized at least one transport of illegally purchased firearms to Mexico. *See* Doc. 28, Exhibit 4.

As previously touched upon, Defendant did not have income to support multiple purchases of large caliber firearms, ranging in price from $8,000 to $20,000 each. Defendant's reportable wages for between first quarter 2022 and second quarter 2023, totaled under $25,000.[3] Within a little over a years' time, he directly purchased the $20,000 M2 in June of 2022, and admitted to supplying $10,000 for the purchase of the machine gun on August 17, 2023. Barbosa Torres indicated he facilitated the purchase of

_____

[3] Reported wages are according to an Arizona Guide System wage inquiry, which was provided to Defense Counsel on December 12, 2023.

eight Barrett rifles for Defendant, costing around $8,000 each, as well as an attempted purchase of another M2 rifle, which retails for around $20,000.  Therefore, in slight over a year, evidence exists that Defendant directly or indirectly purchased (or attempted to acquire) over $100,000 in firearms – which is well over his reported earnings.  Further, the level of large caliber firearm purchases supports agent's beliefs that Defendant is a mid-level and possibly a high-level firearms coordinator possibly for a Mexican drug cartel.

Defendant also has strong ties to Mexico and regularly crosses the border.  Border crossing records show Defendant traveled to Mexico 195 times, with at least 5 trips in 2023, he most recent one being in August 2023.  *See* Doc. 28, Exhibit 1 at 5-6.

It is important to note that Defendant provided a different story to Pretrial Services after he was arrested. *See* Doc. 14.  Although he indicated that he was raised in Mexico and moved to Phoenix, Arizona, about five or six years ago for employment opportunities, he also said that he had not returned to Mexico since moving to Arizona.  *See Id*. at 2.  Defendant also denied being married during his Pretrial Interview despite the fact his counsel argued at his detention hearing that the reason he went to Mexico in August 2023 was to get a divorce and not to flee law enforcement and avoid arrest.  *See* Tr.  11/23/2023 at 15, lines 11-15.  Therefore, the Court should consider Defendant's statements to pretrial services suspect.

Defendant is a flight risk not only based on his ties to Mexico, but also his lack of a permanent address in either Arizona or Utah.  When Defendant was interviewed by agents on August 17, 2023, he stated he moved around and previously lived with a girlfriend. However, he was unable to provide a home address or and address for the girlfriend. *See* Defendant is a flight risk not only based on his ties to Mexico, but also his lack of a permanent address in either Arizona or Utah.  When Defendant was interviewed by agents on August 17, 2023, he stated he moved around and previously lived with a girlfriend. However, he was unable to provide a home address or and address for the girlfriend. *See* Doc. 28, Exhibit 1 at 5. .

//

## III.   CONCLUSION

Therefore, the Court should uphold Judge John Z. Boyle's order of detention. Alternatively, The Court should detain Defendant as both a danger to the community and as a flight risk.

Respectfully submitted this 12th day of December 2023.

GARY M. RESTAINO
United States Attorney
District of Arizona

 s/ Sheila Phillips
SHEILA PHILLIPS
Assistant U.S. Attorney

## CERTIFICATE OF SERVICE

I hereby certify that on this date, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrant(s):

Stephen G. Ralls
Grant Denton Wille
Richard Alexander Coomer
*Attorneys for Defendant*

 s/Carlton Covington

United States Attorney's Office